# GORDON E. R. TROY, PC
Attorney at Law
Mailing: PO Box 67, Windsor, VT 05089
Office: 183 Highfield Drive, West Windsor, VT 05089
(802)881-0640 | Firm Email: office@webtm.com

October 11, 2022

Charles Knull
Knull P.C.
305 Broadway, 7th Fl.
New York, NY 10007

By Email Only
chk@knullpc.com

Re: 22cv1606 Richtone Design Group, L.L.C. v. Kelly et al

Dear Charles:

Your client is obligated to produce the entire "archives," including negatives, either at my office, or where the archives are kept. I do not want to meet your client, but if I must, you have a professional obligation to be present. I do not need an 'expert'. I will be bringing a small lightbox on which to place negatives, and will photograph them either with my iPhone or my digital camera. Regarding Cathy Strack, we were not "threatening" a subpoena or "demanding" her research. We were asking her whether she would provide the information without the necessity of the subpoena, and, as a courtesy to you, we copied you on that email. In any case, since she advised that she wishes to proceed by subpoena, we will issue one shortly.

This letter is also in response to your email of today's date asking where the "privilege logs" are for "communications of Mary Kelly with the Transparency Project's apparent members." Your client is not entitled to receive any documents, let alone a privilege log, if applicable. As we stated on August 8th in our answers to your document requests, the documents sought in Request Nos. 58-71 ("All documents referring or relating to communications…"), are not discoverable in that they (1) fail to seek evidence that is relevant to any party's claim or defense in this case, (2) invade the private communications and thoughts of Defendants and others, and (3) are made for purposes of intimidation. A copy of your Requests for Production and our responses and objections are attached hereto as Exhibits 1 and 2, respectively.

Following our objections, you did not respond by setting forth any ground on which your client is entitled to this discovery. Moreover, it is clear from the breadth of your requests, your responses to Interrogatories, and your email and letter to our office, that your client is improperly attempting (a) to discover who is funding the litigation, (b) to intimidate Ms. Kelly and third parties from communicating with each other about this litigation, as it is their right to do, and (c) to interfere with the fundraising efforts of the Pilates Transparency Project, all because your client is unhappy with the negative publicity he is receiving.

You objected to (and in a number of instances, your client refused to answer) ten of the eleven Interrogatories we propounded, on the basis that "this interrogatory as not likely to lead to much if any relevant information and merely posed as part of a fishing expedition on behalf of some funders of this



litigation who have no standing to request anything." You further wrongly claimed that "[t]he two images at issue in this litigation are in exhibits to the Complaint," when you know from our clients' Counterclaims that there are numerous images at issue in this litigation, including all the images with respect to which your clients filed takedown notices, and the images in your client's 1992 Deposit Copy and the 2000 Book. Another example of your denial that this case involves more than just two images on which your client decided to sue, is your objection to Interrogatory No. 5, where you state,

> Plaintiff further objects to this interrogatory as not likely to lead to much if any relevant information and merely posed as part of a fishing expedition on behalf of some funders of this litigation who have no standing to request anything, as infringement of only two photographs are claimed in this litigation.

A copy of your Responses to Interrogatories is attached as Exhibit 3.

Your clients' improper motives for seeking discovery of communications between our client and third parties is also found in your non-responsive "partial response" to Interrogatory No. 11, which asked Plaintiff to provide the basis for any theory or calculation of damages that it contends it is entitled to recover from Defendants. There, Plaintiff stated that sales at its Etsy store

> have substantially reduced since the onset of this litigation and the commencement of social media postings by or on behalf of Defendants and this action, from approximately $3,000 per month average to $1000 per month average."

These are not "damages" which your client can recover. They are not the result of any alleged infringement by our client, but consequences of your clients' choice to bring this lawsuit. Your clients' dissatisfaction with the results of that decision obviously underlie your clients' improper discovery tactic.

Further examples of your client's improper motives in seeking discovery of the aforementioned communications are your emails and letters to this office.

On July 18 (Exhibit 4) you complained that the Pilates Transparency Project is "apparently" "complaining about [Plaintiff's] document requests to Mary Kelly." You further complained that "there is no mention that the bulk of what I have requested is documents relating to the Counterclaims and Third-Party Claim" and "I think this is information designed to gin up donations." First, we reviewed the post that you sent us and there is no evidence that your requests were shared with anyone other than the defendants. The post merely states that there were 72 requests which "are calculated to drive up the cost of defense." Second, It might have occurred to you that the specifics of your requests were not mentioned because whoever wrote the post didn't have access to your requests. Third, the Requests are not confidential documents.

By letter dated September 25, 2022 (Exhibit 5), you also claimed, without evidence, that "Mary Kelly is quite obviously sharing every bit of disclosure made by Plaintiff with the Transparency Project." None of your accusations provide an adequate motive for discovery of our client's communications about the case with third parties. Neither the financing of the defense nor the motives behind it, which



your clients are clearly seeking in their document requests, are proper subjects for discovery. As the court observed in *Benitez v. Lopez*, 17-cv-3827 (E.D.N.Y. March 14, 2019), 2019 WL 1578167 *1,

> As to the litigation funding documents, Defendants fail to establish that such discovery is "relevant to any party's claims or defense." Fed. R. Civ. P. 26(b)(1). Defendants contend that they should be able to inquire about any financing "and the motives behind it," because it "goes directly to plaintiff's credibility and is grounds for impeachment at trial." These claims are without merit. Defendants do not explain how any litigation funding impacts Plaintiff's credibility or how it could be used to impeach his trial testimony.

See also, *Eastern Profit Corporation Limited v. Strategic Vision US, LLC*, 18-cv-2185 (S.D.N.Y. December 18, 2020), 2020 WL 7490107 *8:

> [C]ourts in this Circuit have rejected claims for such documents when the only asserted relevance is that they will permit the requesting party to peer into its adversary's strategy, the adversary's reasons for pursuing what the requesting party might believe is baseless litigation, and the adversary's rationale for accepting or rejecting settlement offers.

(citations omitted); *Kaplan v. S.A.C. Capital Advisors, L.P.*, Case No. 12–CV–9350 (S.D.N.Y. Sept. 10, 2015) 2015 WL 5730101 *5 (denying discovery of "contracts, litigation funding agreements, other similar documents executed between their counsel and third parties relating to this case, and correspondence with those funders or third parties about this case"); and *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Products Liability Litigation*, 405 F.Supp.3d 612 (D.N.J. 2019) (discovery seeking a party's agreements, communications, and documents with third-parties relating to funding, conferences, meetings or conventions," denied absent showing of good cause).

If there are specific reasons why your client should be entitled to discover any "documents referring or relating to communications" between Mary Kelly and any third party, we will, of course, consider the request. However, on the current record, we stand firm in rejecting your discovery requests.

Lastly, your letter received at 5:07 pm today does not even remotely address our objections to your client's discovery failures. Accordingly, we are planning to appear before the Magistrate on October 19, as stated in his order of September 9.

Sincerely,

Gordon E. R. Troy, PC

By: _____
      Gordon E. R. Troy, Esq.
Direct Email: gtroy@webtm.com


https://www.webtm.com
Admitted in Vermont, Illinois, New York and the District of Columbia
Intellectual Property Law — Trademarks • Copyrights • Trade Secrets • Contracts • Litigation