# GORDON E. R. TROY, PC
### Attorney at Law
Mailing: PO Box 67, Windsor, VT 05089
Office: 183 Highfield Drive, West Windsor, VT 05089
(802)881-0640 | Firm Email: office@webtm.com

March 22, 2023

David Postolski
James Klobucar
Gearhart Law, LLC
41 River Road
Innovation Plaza
Summit, NJ 07901
phone: 908.273.0700
fax: 908.273.0711

**By Email Only**
david@gearhartlaw.com
james@gearhartlaw.com

        Re:    <u>22cv1606 Richtone Design Group, L.L.C. v. Kelly et al</u>

Dear David and James:

For the reasons set forth below, our client will not provide discovery responses to the following "Supplemental" requests, and Defendants hereby request that they be withdrawn:

- Supplemental Requests for Admission ("sRFAs") 11-13, 14-18, and 20-26
- Supplemental Interrogatories ("sROGs") 1-5, 11-13, and 18-20
- Supplemental Requests for Production of Documents ("sRFPs") 73-87, 91, and 93

### 1. sRFAs 25 and 26, sROGs 11-13, and 18-20, and sRFPs 73-82, 91, and 93 are beyond the scope of discovery.

Fed. R. Civ. Pro. 36(a)(1) provides that "A party may serve on any other party a written request to admit...the truth of any matters <u>within the scope of Rule 26(b)(1)</u>..." (Emphasis added.) The purpose of Rule 36 "is to allow for the narrowing or elimination of issues in a case." *Kurana v. Wahed Invest, LLC*, Case No. 18-CV-233, 2020 WL 6729124 *2 (Nov. 16, 2020).

Fed. R. Civ. Pro. 26(b)(1) defines the scope of discovery as

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.



**Gordon E. R. Troy, PC**
Page 2

sRFAs 25 and 26, sROGs 11-13, and 18-20, and sRFPs 73-82, 91, and 93 are irrelevant to any claims or defenses in this case, and do not, and cannot, narrow or eliminate any issue in the case. Furthermore, as you surely are aware, Plaintiff already attempted to seek the same information in Plaintiff's First Set of Requests for Production Nos. 58-71, and was rebuffed by Magistrate Judge Krause. The history of Magistrate Judge Krause's ruling is found in the letters between the parties and the memo orders, specifically:

> On September 7, 2022, Magistrate Judge Krause ordered that "The parties are to file letters regarding any outstanding discovery disputes by 10/12/2022; responsive letters are to be filed by 10/17/2022."
>
> On October 12, 2022, Defendants filed their disputes (Dkt. #21), also referencing Defendants' refusal to respond to Plaintiff's requests regarding the PTP and private communications between and among various individuals, including Ms. Kelly (Dkt. # 21-12)
>
> On October 15, 2022, Plaintiff filed its disputes (Dkt. #22), referencing Defendants' refusal to answer questions regarding the PTP and to produce Defendants' private communications.
>
> On October 17, 2022, Defendants filed a responsive letter (Dkt. # 23), which stated, in pertinent part,
>
>> I file this letter in response to Plaintiff's letter, which appears to be seeking discovery of private communications of Defendants and colleagues who may be part of the Pilates Transparency Project ("PTP"). The PTP sponsors and publicizes a GoFundMe for the benefit of Defendants.... Plaintiff's blanket discovery requests (Ex. 14) [Dkt. # 23-2] begin with ¶ 58, seeking "[a]ll documents referring or relating to communications of Defendants by and among members of the Pilates Transparency Project," and continue along similar lines in 13 more requests. Given the animus between Gallagher, on the one hand, and Defendants and the individuals targeted in Plaintiff's requests (some of whom had their social media accounts deleted or were harassed by Gallagher), on the other, it is clear that Plaintiff seeks those communications not to defend against counterclaims, but to invade private communications and thoughts of Defendants and others, as well as to intimidate, as set out in my letter of Oct. 11.
>
> On October 19, 2022, the following Minute Entry was made for the hearing before Magistrate Judge Krause: "Discovery disputes resolved on the record." Plaintiff's requests for information about the PTP and private communications were among the issues resolved by Judge Krause's finding that the Pilates Transparency Project ("PTP") and communications with and among its participants, was not within the scope of discovery.
>
> On November 15, 2022, Magistrate Judge Krause issued the following order: "A status conference before Magistrate Judge Krause is hereby scheduled for December 6, 2022 at 10:00 a.m. By December 1, 2022, the parties are directed to submit a proposed agenda for the conference. Based on this agenda, the Court will determine whether the conference will take place in person or via teleconference."



> On December 1, 2022, the parties filed letters with the Court stating their respective agendas for the December 6 hearing. Plaintiff's agenda contained a single issue: the removal of Dkt. # 36-1 from Pacer. No further dispute was raised regarding the PTP or private communications because the issue had already been resolved.

Magistrate Judge Krause's ruling is not the only reason why these requests are beyond the scope of discovery. Additional reasons are stated below. We believe, however, that asking for the same discovery in twenty more "supplemental requests" constitutes harassment of our clients.

**2.   sRFAs 14-18, and 20-24, sROGs 1-5, and sRFPs 73-87 improperly attempt to seek discovery protected under the work-product doctrine.**

Recently, as you know, Defendants produced in discovery Declarations signed by third-party witnesses Christina Maria Gadar, Heather Erdman, Hila Paldi, Victoria Batha Cuomo, and I.C. ("Chuck") Rapoport. Each of these third-party witnesses (as well as others) were also included in our supplemental disclosures. The Declarations were prepared by my office to be submitted in evidence, at the appropriate time, in support of Defendants' counterclaims. Among other things, and together with other documents (including evidence produced by your clients), they show your clients' bad faith and vindictive conduct related to Plaintiff's copyright claims.

In sRFPs 73-82, Plaintiff is seeking communications between Defendants' counsel (which includes my paralegal, Lawrence Stanley) and the third-party witnesses who signed the Declarations. In sRFPs 83-87, you are seeking all drafts of those Declarations, and in sROGs 1-5, you are seeking information regarding the "circumstances by which" the witnesses signed their Declarations (whatever that means). All of this information is protected by the work-product doctrine.

Fed. R. Civ. P. 26(b)(3) codifies the doctrine in part, providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative'" unless "the party shows that it has substantial need for the materials ... and cannot without undue hardship, obtain their substantial equivalent by other means." The phrase "anticipation of litigation" means, in the Second Circuit, "prepared because of litigation." *Plew v. Limited Brands, Inc.*, citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1996). Courts have also extended the work-product doctrine to intangible work product, such as that sought in the sRFAs and sROGs . See, e.g., *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010) ("*Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3).")

The work-product doctrine protects the communications that Plaintiff seeks to obtain, because the third-party witnesses share common litigation interests with Defendants. See, *e.g.*, *Howard University v. Borders*, Case NO. 20-cv-4716, 2020 WL 7774347 *2 (Dec. 30, 2020) (emails seeking information from "employees and others, including third parties to help prepare arguments for the litigation" are protected by the work-product doctrine); *Hedgeserv Limited v. SunGard Systems International Inc.*, Case No. 6-CV-05617, 2018 WL 6538197 *2 (Nov. 20, 2018) (collecting cases standing for the proposition that disclosures to a third-party witness waives the work-product privilege where the witness does <u>not</u> share a common interest with the disclosing party).



3.   Plaintiff's Supplemental Requests, sRFPs 73-82 , seek to invade the private communications of the Defendants and persons associated with the PTP, violate their First Amendment rights, and run afoul of Fed. R. Civ. Pro. 26(b)(1)'s requirement of proportionality.

Plaintiff seeks to infringe the associational rights of Defendants and persons associated with the PTP by seeking their private communications and fund-raising activities. The Declarations of the third-party witnesses, and the additional stories that some of them told to a reporter for *The New York Times*, published at https://www.nytimes.com/2022/10/14/style/the-fight-for-the-soul-of-pilates-moves-from-instagram-to-court.html, make out a *prima facie* case for protecting their First Amendment rights, given that Plaintiff's and Gallagher's conduct demonstrate a likelihood that if such private communications were required to be produced in discovery, people would be deterred from associating themselves or contributing to the PTP out of fear of retaliation. As Dkt. No. 46-2 suggests, there are many Pilates enthusiasts posting images of Joseph and Clara Pilates who are vulnerable to retaliation by Plaintiff and Gallagher. See, *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 954 F.Supp.2d 127, 142 (E.D.N.Y. 2013). Thus, even if these Requests were within the scope of discovery – which they are not – Plaintiff could only obtain these documents by showing "compelling need," which it has not shown and does not have. *Id.*

Furthermore, non-parties to a litigation, including non-party witnesses, should not be subject to harassing requests and invasions of their privacy. Avoiding embarrassment, harassment, and invasion of privacy "are weighty enough to justify some restrictions on the dissemination of discovery," and therefore courts must "make reasonable efforts to guard against disclosure that has the potential to invade [non-parties'] privacy and impair their personal reputations." *In re General Motors LLC Ignition Switch Litigation*, Case Nos. 14–MD–2543, 14–MC–2543, 2015 WL 4522778 *6 (S.D.N.Y. July 24, 2015).

Regarding proportionality, there are more than 800 emails exchanged between and among the persons whose communications are sought, and our firm. A large number of those emails not only discuss the facts stated in the Declarations, but also disclose theories of defense and counterclaims. Additionally, communications directly between our clients and the third-party witnesses have occurred through social media and phone apps. Even if these communications were within the scope of discovery, which they are not, there is no practical or efficient way for our clients to produce these communications other than for Ms. Kelly to give up her telephone – the lifeline to her business after her Instagram account was taken down twice by your client – to subject it to forensic searches.

4.   sRFAs 14-18 and 20-24, and sROGs 1-5 improperly seek discovery regarding communications and professional relationships between Defendants' counsel and the Declaration witnesses , assume facts not in evidence (e.g., that "Defendants counsel first contacted..."), and pertain to matters to which Defendants have no knowledge and have not been disclosed to Defendants by counsel.

5.   sRFAs 11-13 are beyond the scope of Fed. R. Civ. P. 36(a)(1).

Fed. R. Civ. P. 36(a)(1) permits requests for admission regarding "facts, the application of law to fact, or opinions about either." sRFAs 11-13 fail to satisfy the requirement. They are simply questions about Defendants' knowledge of law. Defendants would not know, because Ms. Kelly is not an attorney, that


https://www.webtm.com
Admitted in Vermont, Illinois, New York and the District of Columbia
Intellectual Property Law — Trademarks • Copyrights • Trade Secrets • Contracts • Litigation

Plaintiff's Third Cause of Action, citing Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), technically alleges damage to Plaintiff's trademark and/or the goodwill therein, which is a form of trademark infringement. She is under no obligation to read the briefs, depositions, and trial testimony, comb through the evidence (which in any event is unavailable), or even read the decision in *Pilates, Inc. v. Current Concepts, Inc.*, 120 F.Supp.2d 286, to determine whether there were any allegations of copyright infringement "by any party." With respect to sRFA 13, she has no obligation to educate herself to standards of proof.

sRFAs 11-13 are also improper insofar they are a not-so-clever attempt to preclude Defendants from raising the defense of collateral estoppel in the event that Plaintiff tries to argue that the photographs and other materials it allegedly received in the purchase from Wee Tai Hom and Healite fall under the rubric of "good will" that appears in the Asset Purchase Agreement between the latter and Sean Gallagher. The Court has already ruled that Defendants will not be precluded from such defense. See, Dkt. ≠ 47, which is the joint letter submitted by the parties, stating, in pertinent part,

> The parties' counsel also discussed with Judge Krause the issue raised by Defendants regarding collateral estoppel in Dkt. ≠30, and it was agreed that (a) it was unnecessary for Defendants to amend its answer and counterclaims by adding an affirmative defense, and for Plaintiff to then answer the amended filing, and (b) should Plaintiff assert any facts or legal theory that, in Defendants' view, raise the collateral estoppel issue, Defendants would not be barred from asserting such affirmative defense.

Please advise whether you will be withdrawing any or all of the foregoing discovery requests so that we can bring any remaining issues to the attention of Magistrate Judge Krause.

I further note that your client continues to fail to produce, among many other things, the very documents that he seeks in sRFP 89, i.e., "any documents or things that evidence the belief or allegation that Sean Gallagher made any Digital Millenium [sic] Copyright Act claims on any Instagram Accounts." As you surely know, the documents in Defendants' possession that fall into that category were produced last fall, and the Declarations are also replete with that evidence. What is missing are the documents in your clients' possession – correspondence with Instagram and Meta.

Lastly, we reiterate our request that you provide us with Word versions of your discovery requests as a courtesy so that we can more efficiently respond.

Sincerely,

By: _____
    Gordon E. R. Troy, Esq.
Direct Email: gtroy@webtm.com



https://www.webtm.com
Admitted in Vermont, Illinois, New York and the District of Columbia
Intellectual Property Law — Trademarks • Copyrights • Trade Secrets • Contracts • Litigation