UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                 :
                                            Docket #22cv1606
 RICHTONE DESIGN GROUP, L.L.C,          :


                      Plaintiff,        :


   - against -                          :


 KELLY, et al.,                         :
                                            New York, New York
                      Defendants.       : October 19, 2022

------------------------------------ :

PROCEEDINGS BEFORE
THE HONORABLE ANDREW E. KRAUSE,
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For Plaintiff:            ROMEO SALTA, ESQ.
                          (Of Counsel)
                          630 Ninth Avenue, Suite 405
                          New York, New York 10036


For Defendant            GORDON E. R. TROY, P.C.
And Counterclaimants:     BY:  GORDON TROY, ESQ.
                          183 Highfield Drive
                          Windsor, Vermont 05089

Transcription Service: Carole Ludwig, *Transcription Services*
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

## <u>INDEX</u>

### <u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-<br>Direct</u> | <u>Re-<br>Cross</u> | <u>Court</u> |
|---|---|---|---|---|---|

None

### <u>E X H I B I T S</u>

| <u>Exhibit<br>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir<br>Dire</u> |
|---|---|---|---|---|

None

1

1

2        THE CLERK:  Good morning, all.  This is the

3  matter of Richtone Design Group v. Kelly, et al., docket

4  number 22cv1606.  The Honorable Andrew Krause presiding.

5  Counsel, please note your appearance for the record

6  starting with plaintiff's counsel.

7        MR. ROMEO SALTA:  Romeo Salta, of counsel for

8  Knull P.C., 630 Ninth Avenue, New York, New York.  Good

9  morning, Judge.

10        THE COURT:  Good morning, Mr. Salta.  And you

11  are?

12        MR. SEAN GALLAGHER:  Sean Gallagher.

13        THE COURT:  Oh, good morning, Mr. Gallagher,

14  okay.

15        MR. GORDON TROY:  Good morning, Your Honor,

16  Gordon Troy here for the defendants and the

17  counterclaimants.  One point is I'm not sure why Mr.

18  Salta's here as – he filed a notice of appearance just

19  yesterday, and my discovery dispute, which is what this

20  hearing is about, is with Mr. Knull who should be here.

21        THE COURT:  Okay, well --

22        MR. TROY:  I've never communicated --

23        THE COURT:  Good morning, first of all, let's

24  start with that.

25        MR. TROY:  Okay.

THE COURT:  Your discovery dispute is with the plaintiff and whoever's representing the plaintiff. It's not with Mr. Knull.  I mean I understand the point that Mr. Knull is the person with whom you've been corresponding, but the dispute is with plaintiff/third-party defendant Richtone and Mr. Gallagher.  So we'll see.  I mean if Mr. Salta is not prepared to address those issues, we're going to have a problem, but hopefully Mr. Salta is prepared to address those issues. I assume that Mr. Salta has been fully briefed on all of this by Mr. Knull and that he'll be prepared to address the issues, and if not, then we'll revisit this concern. Okay?

MR. TROY:  Thank you, Your Honor.

THE COURT:  Very good.  Everyone can be seated.

MR. SALTA:  Thank you, Your Honor.

THE COURT:  You can feel free to sit during this proceeding.  We'll be going back and forth.  I know some lawyers do not feel comfortable sitting when addressing the Court, I was that way, but I don't want you to be constantly feeling the need to stand up and down just for my benefit.  So you are granted permission to either sit or stand, whichever makes you more comfortable.

MR. TROY:  I'll try not to act like a jumping bean.

THE COURT:  It's okay.  Again, I understand, some people are just not comfortable sitting when addressing the Court.  I definitely understand that. Whatever we do just make sure we speak clearly and into the microphone so that we can make a clear recording of the proceeding today and have a good record in case anybody needs to take any objections to Judge Karas.

All right, so I have reviewed the letters.  We were last together on, well, I guess really just Mr. Troy and I were last together on September 7, and there are some disputes that are percolating here, and we'll go through them.  I'll hear from the parties on those issues.  I mean, Mr. Salta, I saw your notice of appearance yesterday.  Can you just confirm that I'm correct that you are fully briefed on all of the disputes and prepared to address them today?

MR. SALTA:  I feel that I am fully briefed.

THE COURT:  Okay.  Hopefully that is accurate, and we'll see where we go.  So as I see it, there are two main issues that have been raised in an appropriate way as far as the discovery disputes go.  That is with respect to the plaintiff/third-party defendants'

interrogatory responses and the response from this side

of the courtroom to the demand for inspection of the

negatives and photographs.  There's a bit of a sort of

back and forth in the submissions about requests for

communications from this group of individuals who have

been described by Mr. Troy as litigation funders.  We

will touch on that briefly, but I will say that to the

extent Mr. Troy was attempting to raise that as a

discovery dispute, he didn't really do it in the way

that I would have expected.  So I'm not sure if that is

really ripe for my view.

        The reason I say that is because – I'm sorry, I

should've said Mr. Knull didn't raise that in the way

that I would've expected because the reason I say that

is because letters raising affirmative discovery

disputes were due on October 12, and Mr. Troy submitted

his letter raising various disputes on October 12.  In

Mr. Knull's response on October 15 at ECF number 22, he

does allude to this issue regarding the Pilates

Transparency Project, and that prompted a further

response from Mr. Troy on October 17 saying that he

interpreted that letter, ECF number 22, as an attempt by

Mr. Knull to seek discovery of private communications of

the defendants and individual who may be part of the

2 Pilates Transparency Project.

3        Again, if Mr. Knull is seeking to raise that as

4 a discovery dispute for the Court to resolve, it

5 should've raised it in his letter on October 12.  He

6 also should've, or he should (indiscernible) the letter

7 on October 12 raising the issue, he also should've been

8 more transparent about it if that's what he was doing.

9 So I'm not really sure I have enough information before

10 me to really address that point.  We'll come to that at

11 the end if necessary.

12        As I've alluded to here, I have reviewed the

13 parties' submissions, ECF numbers 21, 22, and 23.  I've

14 reviewed some of the supporting material, although,

15 frankly, some of the ways in which the issues were

16 presented here in your submission, Mr. Troy, were a

17 little difficult for me to follow.  But that's fine,

18 we'll be able to walk through them today.

19        We'll start with the question of the

20 interrogatories, and I see from the letter that there

21 are one, two, three, four, five, six, seven

22 interrogatories in dispute.  And we'll go through them

23 one at a time.  The main thrust of the response from Mr.

24 Knoll was that the interrogatories only appeared to

25 relate to the counterclaims or certain counterclaims.  I

think Mr. Troy took exception to that characterization,

and that doesn't really seem correct to me and it

doesn't seem like an appropriate basis to object to

responding to them.  That's where I come to from what

I've read so far.

But, Mr. Troy, let me turn to you, let's start

generally if there are other sort of objections or

concerns that have been raised that apply broadly to all

of the interrogatories, I'll be curious to hear that

from your perspective.  And then if not we'll just go

through them one by one.

MR. TROY:  Well, first of all, Your Honor,

please accept my apologies for making this more

confusing than it was.  Actually, I was trying to

prepare for this letter and looking at the numerous back

and forths regarding these issues, and because they

weren't orderly, I thought that it would be easier for

the Court if I pulled each of those sections together

which is what I put, tried to put together in the first

I think six exhibits --

THE COURT:  Right, I actually really appreciate

what you tried to do.  I could tell what you tried to

do.  But the thing that was confusing about it was it

left me a bit at sea as to what the current state of the

dispute was because there's a lot of back and forth.

It's sometimes hard for me to interpret from all of the

back and forth where everybody landed.  And part of the

problem with Mr. Knull's response is he doesn't really

articulate very clearly what his position is on some of

these things, and maybe that's part of your issue as

well, I don't know.  So we'll have to hear from

everybody about that.  Again, I appreciate what you

attempted to do, and it didn't quite work, but it's not

for lack of effect.

        MR. TROY:  And to answer your question, Your

Honor, I think the landing is we have not moved the

needle in any direction here.  There are a couple of

instances, as you go through each of these where Mr.

Knull has said that maybe he might find something else.

But the objections are just, as I go around and around

with them, I've actually never seen these kinds of

volume of objections.

        But let's go – I know that we're not here to

discuss the substantive issues of the case, but

obviously the discovery has to do with the substantive

issues of the case.

        THE COURT:  Sure.

        MR. TROY:  And what we have here is that the

plaintiffs have sued my clients for copyright

infringement, and based upon everything I know about the

world of Pilates and having been involved in a five-year

lawsuit previously than Mr. Gallagher was involved in

with his prior company, I have a wealth of knowledge

about a lot of the history as it pertains to Pilates and

Mr. Gallagher's claims, etc., etc.

Overlay on top of that, sir, that we in, on

behalf of another client, as far back as 2017, and I

actually included the letter from Mr. Knull – I didn't

want to bore you with my communications – but back in

2017 the thrust of the argument at the time versus now

has been that because Mr. Gallagher possesses negatives

that he under the 1909 Copyright Act, which if

applicable to these older works, that he is the de

facto, ipso facto, take your choice of words, owner of

the copyright.  And as you know or from copyright law is

that owning a copy and owning a copyright are two

different things.

So what our affirmative defenses and our

counterclaims are, even though they're wrapped around

legal theories because that's a necessity of such, the

thrust of them is challenging --

THE COURT:  The validity of the copyright.

1

2          MR. TROY:  -- the validity of the copyright.

3          THE COURT:  Right.

4          MR. TROY:  Plain and simple.  And to do that we

5     are seeking to inspect he actual negatives, and I

6     parenthetically point out that in the prior Pilates Inc.

7     v. Current Concepts case which was decided by Judge

8     Cedarbaum in 2000, plaintiff's claim was that because

9     they got all these, quote, "archives" that were

10    supposedly memorialized in the 1992 copyright

11    registration filed by Mr. Gallagher, that they had

12    goodwill and because that case involved trademarks.  The

13    focus was, well, whether or not this body of material

14    constituted goodwill, and Judge Cedarbaum completely

15    rejected that there was any goodwill associated with it.

16          But my point is is that at the time with Mr.

17    Gallagher's then counsel, I met with him in his

18    conference room in his offices in Manhattan, and he had

19    several boxes of materials that he showed to me, and

20    there was not one negative amongst them.  And now all of

21    a sudden we look 17 years later, that the claim to the

22    copyright is because of the possession of the negatives

23    which is why I have a complete right to inspect these

24    negatives.

25          Then as far as the interrogatories themselves,

what we're trying to ascertain is which of these images

is there a valid claim of copyright by Mr. Gallagher,

and I think that's a perfectly reasonable question to

ask --

THE COURT: Let me ask you this question. I

understand what you're saying, I appreciate some of the

background because it's helpful for context. When it

comes to the allegations by the plaintiff with respect

to infringement, are those focused on particular

photographs or particular images of some sort?

MR. TROY: To answer your question, Your Honor,

they sued on two photographs only; however, plaintiff

has a history of takedown --

(interposing)

THE COURT: No --

MR. TROY: -- against defendant.

THE COURT: Okay, but this case is about, from

the plaintiffs' perspective at least, it's not two

photographs, right?

MR. TROY: Plaintiff, that is plaintiff's

perspective, but they used under two copyright

registrations which I have the absolute right to

challenge. And those copyright registrations encompass

more than just the two photographs. Somewhere around

1
2    2,000 photographs.

3         THE COURT:  Okay.  And your counterclaim, as to

4    the invalidity of, counterclaim/third-party complaint as

5    to the invalidity of the copyright, is it your position

6    that that counterclaim encompasses all 2,000 photographs

7    or just the two photographs that are at issue in this

8    case, the two photographs that are alleged in the

9    operative complaint?

10        MR. TROY:  Everything, Your Honor.

11        THE COURT:  Okay.

12        (interposing)

13        THE COURT:  So just in terms of, because the

14   parties clearly have different views as to this.

15   Plaintiff would like to limit this case to make it just

16   about two photographs, but your position is that the

17   counterclaim/third-party complaint is much broader than

18   that.  It's about, if it were just the counterclaim,

19   that might be tricky, but certainly if there's a third-

20   party complaint, which there is although the way it's

21   put together in one document is slightly unusual, it is

22   meant to encompass the entirety.  So, in other words,

23   the counterclaim/third-party complaint is much broader

24   than the complaint filed by the plaintiff.

25        MR. TROY:  Correct, Your Honor.

1

2          THE COURT:  Okay.

3          MR. TROY:  If you don't mind --

4          THE COURT:  Go ahead.

5          MR. TROY:  -- I'd like to add to that, I mean

6    if plaintiffs had a problem with the scope of what is I

7    think is pretty clear in our answers, affirmative

8    defenses and third-party complaint, then the proper

9    procedure would've been to file either a motion to

10   dismiss or motion for summary judgment at an early stage

11   in this case.  We are in the midst of discovery, and I

12   am entitled to pursue what amounts to our defenses which

13   is an offense.

14         THE COURT:  Well, but I mean let's not blend

15   the points together because the defenses are defenses as

16   to the claims that were alleged against you.  The

17   counterclaim/third-party claim is offense, it's not just

18   your defenses, and there you would be, again, if you

19   were – I'm looking, the reason I keep looking at the

20   computer is I've pulled up the docket and I'm looking at

21   the counterclaim and third-part complaint specifically.

22   But we are now within the confines of this one

23   proceeding which encompasses both the plaintiff's

24   original claims and the defendant's original defenses

25   but also the counterclaim and third-party complaint.

1

2          So you may or may not be entitled to certain

3     discovery as to defenses and then you may or may not be

4     entitled to other discovery as to counterclaims and

5     third-party claims.  So we're in a single proceeding

6     where all of this is blended together, but it's

7     important to draw appropriate distinctions between the

8     defenses and the counterclaims inasmuch as the response

9     to the discovery demands seems focused on the procedural

10    aspects of it which I'm not sure is meaningful

11    considering we have a single proceeding.

12         But if we were in a universe where the

13    complaint only related to two photographs and there were

14    no counterclaims or, that there were no third-party

15    complaint, then we might have a much narrower scope of

16    discovery.  But that's not the world in which we are

17    living because there is, in fact, a third-party

18    complaint and there are, in fact, counterclaim.  So it's

19    important to just be precise about it, particularly

20    because the plaintiff/third-party defendants' responses

21    and objections to these discovery demands focus on the

22    procedural posture for better or for worse.

23         Okay, let me turn to you, Mr. Salta.  I know we

24    haven't started to drill down yet into the particular

25    requests or the particular interrogatories, but I'd like

to hear your perspective because it does seem as though

focusing on the notion that the complaint only makes

allegations as to two photographs is a bit of a narrow

reading of the entire situation.

MR. SALTA:  Well, actually, we are conceding

that 17, I believe 17 pictures are at issue because in

the --

THE COURT:  In your complaint.

MR. SALTA:  No, in the complaint there's two,

but in the, I believe in the counterclaim there is

allegations of improper takedowns involving 15

photographs.  So we were concentrating on those, and

then in the third counterclaim the defendant expanded

the horizon to include everything as well as, you know,

and basically the objection is grounded -- Mr. Tory's

correct that we have to talk a little bit about the

subject matter of the case here.  We have a 30-year-old,

we have a 30-year-old registration here, copyright

registration.  Never had a problem.  There's never been

a case that I'm aware of copyright fraud where a

copyright was illuminated because of fraud.

What's happening here, and I must say this, is

there are these people, there's a campaign afoot, the

Transparency Project is a campaign.  It's not just a

funding project like your typical funder who invests in

litigation.  This is a campaign for them, and they're

making a lot of money.  And they're alleging --

THE COURT:  Who's making a lot of money?

MR. SALTA:  Well, the defenses, the defense for

one is making a lot of money, and the purpose of --

THE COURT:  Meaning he's being paid to

represent somebody?  I mean come on.  Let's not throw

around attacks; let's focus on what we're actually

talking.

MR. SALTA:  All right.  So basically there's a

fishing expedition going on here, and it's quite

egregious.  First of all, with regard to the trademark

case that Mr. Troy alluded to, he didn't ask for

negatives.  We got negatives, we have negatives.  He can

see the negatives.  We have no problem with that.  He

wants to take pictures of all of the documents.  Now, we

don't trust them for one --

THE COURT:  Okay, let's deal with that issue

first because this one doesn't seem terribly complicated

to me.  Why – if your concern is that the photographs or

the pictures of the photographs or the pictures of the

negatives are going to be used improperly either by the

named defendants here or people who are affiliated with

them in some way or who are spiritually aligned with

them or who have common interests of one sort or

another, why can't that be addressed by a

confidentiality agreement and protective order?

MR. SALTA:  At least we will need that, I

agree.

THE COURT:  Well, that's easy.  As I point out,

you weren't at my initial conference in this case with

the parties in early September, but as I always point

out in any case that's referred to me for general

pretrial supervision, I have a sample confidentiality

and protective order on my webpage on the court's

website.  That covers the issues that need to be covered

in 98 percent of all cases that appear before me for one

sort of another, including large complicated,

multimillion dollar litigations.  Hold on.  Hold on.

But I always tell parties that if there are

particular protections that are necessary for this case,

you're free to take that sample confidentiality and

protective order, make your proposed changes to it,

submit it as a redlined document for my review, and I'll

review it.  And if it requires strict protections to

ensure that documents, photographs, or whatever they

might be are not shared beyond the litigation or, that's

what a confidentiality order does in the ordinary course

of business, that if there's something that needs to be

further implemented, an attorney's eyes only provision

or something like that, there are a lot of ways to

address that.

So the notion that somehow an inspection of the

photographs or the inspection of the negatives is a

threat to the plaintiffs/third-party defendant because

of the possibility of improper dissemination of those

photographs, that really should be something that we can

easily address.

MR. SALTA:  Confidentiality order at the very

least, Your Honor, but there is – but we're objecting to

photographs taken of them.  He can have experts look at

them to see if the negatives are genuine, he can look at

the submission, he can look at everything.  But we don't

– we just believe that the photographs themselves should

not be duplicated in any way.

THE COURT:  Okay.  So let's just, since we're

focused on this, why do you need, Mr. Troy, to take

photographs of the photographs?  I mean an inspection,

very often the purpose of the inspection is to actually

inspect the originals and to determine if anything needs

to be done with those or arguments need to be made.  I

mean you've represented that you yourself are a

photographer, so that's great.  I mean if there's going

to need to be some sort of expert testimony in this

case, it's not going to come from you.  Presumably there

would be a witness.  But in any case, it's not entirely

clear to me why photographs of the negatives would be

relevant in this case.

MR. TROY:  First of all, Your Honor, I'm not

planning on being a witness.

THE COURT:  I didn't think so.  I figured you

wanted to continue to be the lawyer.

MR. TROY:  Yes, I much prefer being a lawyer as

I'm a rank amateur photographer if you will.

THE COURT:  Okay.  Well, you're the one who

mentioned that you were a photographer.

MR. TROY:  Well, the point is is that if you

look at what we submitted which is 23, 6, 7, and 8,

which is a copy of the deposit copy of 1992 registration

and if you look at it, most of it is illegible.  And if

you would prefer, I mean I printed the whole thing out,

won't mention the fact that it used up an entire black

ink cartridge.  My laser printer's pretty big.

THE COURT:  That's fine.  I didn't print it

out, so I'm going to open it up on my computer here.

1

2          MR. TROY:  And we submitted it in three parts

3    because of the size and the ECF limitations.  But you'll

4    see on there, I mean there's a number of issues.  One is

5    is that so much of it is completely illegible --

6          THE COURT:  Right, that's why you go and

7    inspect it and look at it.

8          MR. TROY:  Right, but here's the issue, Your

9    Honor, is is that now all of a sudden plaintiff is

10   saying that there's 17 photographs at issue, but there's

11   many more than that for the very simple reason is is

12   that our client has access to a huge volume of materials

13   that plaintiff supposedly claimed copyright in.  I mean

14   --

15         THE COURT:  Right, I understand it.  I

16   understand the point.  You're concerned that even if you

17   prevail in this litigation as to the two or the

18   seventeen photographs, that you'll come back and face

19   another lawsuit a month, a year, three years from now

20   regarding some of photographs which you contend have the

21   same exact copyright issues or limitations that are

22   being litigated here.  So it should all be litigated at

23   once.

24         MR. TROY:  Precisely.  I mean plaintiff's

25   counsel specifically said one cannot be certain that any

1

2  work is available in the public domain and runs the risk

3  of infringement by copying.  So plaintiff is the one who

4  has actually brought the entire universe --

5         THE COURT:  What are you reading from?

6         MR. TROY:  This is in, if you look at my

7  exhibit, and it's ECF 23-4, the bottom of the first page

8  --

9         THE COURT:  Okay.  I'm concerned more about the

10  pleadings than what counsel represents in discovery

11  dispute letters.

12         MR. TROY:  But this is in part what became the

13  pleadings because we were aware of having dealt with

14  plaintiff's counsel for a number, for over five years of

15  that they were basically claiming the entire universe of

16  these materials, and that's what we are challenging.

17         THE COURT:  Right, and – okay.  Can we just

18  focus for a second on, let's try to do this in as

19  orderly a fashion as possible so that we're not here all

20  day.  The first issue that I'm trying to get resolved is

21  why can't you just go inspect these things without

22  photographing them?  You're going to be able to inspect

23  them.  I don't even really think there's that much of an

24  objection to that.

25         MR. TROY:  No, Your Honor.  The – because --

1

2          (interposing)

3          THE COURT:  The problem is taking photographs

4   of the photographs.  If that creates an illegible

5   version that you can't make use of, how are your

6   photographs going to be any more useful?

7          MR. TROY:  Well, I don't think that that's the

8   issue because, Your Honor, simple light table, you stick

9   the negatives on it, you take a photograph of it.  Now

10  we memorialize what they are claiming they own.  And I

11  have no problem entering into a protective order.  I

12  mean we have not claimed the need for confidentiality

13  obligations with anything.  So we haven't proposed a

14  protective order.  But if plaintiff insists on a

15  protective order and they want to make that attorney's

16  eyes only, I'm absolutely fine with that.

17          I mean if I'm in a position where I cannot

18  share that with my client because they're fearful that

19  my client will share with other people, then I'll

20  respect that even though I think that they're being a

21  little over the top in their --

22          THE COURT:  That's what this case is about

23  essentially.  So be that as it may, you're willing to

24  accept that as a condition, fine.  But, and that may be

25  enough to satisfy the plaintiff, I'm not sure, we'll

come back to that, but I guess maybe I'm having a bit of

a hard time understanding.  You take the photographs,

you make it clearer copies of them using a light table

or whatever.  Why is that necessary?

MR. TROY:  Because this is illegible.

THE COURT:  Right, so your point is that for

purposes of litigating this case, in order for Judge

Karas ultimately to make a determination on summary

judgment as to the validity of the copyright, he's going

to need to have better photographs?  Isn't that a legal

question?

MR. TROY:  Well, I think that – I actually

think that we're talking about trial, we're not taking

summary judgment.

THE COURT:  Fine.

MR. TROY:  But I have to assume that we're

going to trial in this case, and discovery requests are

designed for having to do to trial.  If the situation

presents itself where a motion for summary judgment is

appropriate, we and plaintiff will obviously proceed

accordingly.

THE COURT:  Okay, Mr. Salta.

MR. SALTA:  Your Honor, my client is perfectly

willing to show these documents.  I mean if the

defendant wants clearer, a clearer vision of what these

documents are, they can come in and inspect, they can

use the light table, put the negatives on it.  They'll a

very clear – there's a clear picture of what it is.

There's no reason to take pictures of it.

We understand a protective order, a

confidentiality order or whatever can be of use, but

there's a history here of things bleeding into social

media, evidence that has been produced, evidence that

has been produced in discovery shows up in --

THE COURT:  When there was a protective order

in place?

MR. SALTA:  No.  No, no --

THE COURT:  Which is a pretty large

distinction.

MR. SALTA:  Quite frankly, this is large group

of people involved.  This is not just counsel.

THE COURT:  But he's the one who's going to

have them if it's an attorney's eyes only protective

order, and, by the way, if things show up on social

media in violation of a protective order, it will be Mr.

Troy who has to come in here and answer for that.

MR. TROY:  And I don't plan on --

THE COURT:  That would be a bad day for Mr.

Troy in court.  Sanctions would be the tip of the

iceberg.  Right?  I mean that's the whole point of a

protective order, especially if it's an attorney's eyes

only protective order and especially if the attorney

whose eyes would be at issue is sitting here telling me

that he would willing to agree, if somewhat begrudgingly

because he thinks it's unnecessary, but, nevertheless,

would willing agree to that.

So I mean it's a pretty significant accusation

to suggest without any real foundation that Mr. Troy is

going to go spread this stuff on social media, and if he

did, it would be a serious, serious problem.

MR. SALTA:  I'm not accusing him of --

THE COURT:  Well, he hasn't done anything yet.

(interposing)

THE COURT:  -- anticipatorily accusing him of

the possibility that that might happen because

apparently it happened in other cases where there was no

protective order in place which is a materially

different scenario.

MR. SALTA:  But isn't it true that he would

have to show these pictures and tell his clients or

whoever he's representing that, oh, this is copyrighted,

that isn't, this is, that isn't.  And he would, by

necessity, that's the whole point of the third-party

action is to see what they can and cannot use, and he

would have to compare.

THE COURT: Well, I mean it's your position

that all of these things are subject to the copyright

protection.

MR. SALTA: Absolutely.

THE COURT: So I mean what is there to compare?

Meaning that there might be some other photographs of

Mr. Pilates and his studio that are not within the

universe of Mr. Gallagher's copyright --

MR. SALTA: They're worried about future

litigation. They're worried about putting something up

that they think is not protected and then getting sued

or being hit with a takedown order. So they want to see

everything. The only way that that would work is if

there would be a catalogue of things where Mr. Troy

would say these things are protected. These are not,

these are.

THE COURT: Well, the other way would work from

Mr. Troy's perspective is if he manages to prevail and

wins a judgment that none of these photographs are

protected by the copyright --

MR. SALTA: God bless if that happens

1

2          THE COURT:  But his representation here is that

3   he wants them for purposes of trial ultimately, and that

4   is a big part of what discovery is for, I don't have to

5   tell you that.

6          MR. SALTA:  No.

7          THE COURT:  So with an attorney's eyes only

8   protective order and a scenario where the validity of

9   the copyright as to the entire universe of photographs

10  is at issue, it's hard to understand what the prejudice

11  would be to the plaintiff for having this set of

12  photographs reproduced in a legible, clear format for

13  purposes of potentially use at trial.  I mean, of

14  course, the attorney's eyes only protective order would

15  govern the use of those materials throughout the

16  discovery process.  It would govern and you could

17  include special provisions.

18          Of course, this would be subject to Judge

19  Karas' understanding at the time of summary judgment if

20  there is a summary judgment motion how those images

21  would be handled in case any needed to be filed with the

22  court for any particular purpose.  Certainly, to the

23  extent any needed to be filed before me for purposes of

24  discovery disputes, I would certainly entertain

25  applications for those to be filed under seal given the

obvious sensitivities and concerns that Mr. Gallagher

has expressed.

So I think when it came to trial, we would have

to have a trial in an open courtroom and someone would

have to show the photographs, but there's no photography

permitted in the courtroom.  So it's not as though there

would be a risk of those images being reproduced and

transmitted as a result of that.  Again, I think there

are measures that we can easily put in place that Mr.

Troy is not even objecting to that would address the

concerns on the plaintiff's side.

So unless there are further arguments about

that, I think having inspection of these photographs

subject to a strict attorney's eyes only protective

order and having reproductions in the hands of Mr. Troy

for purposes of litigating this case, subject to, and,

again, I don't think this is in my standard protective

order, but something to this effect is in there, and you

could tighten it up even, language about the return of

all images or copies at the end of, it's often return or

destroy, but I can imagine if, given the sensitivities,

if plaintiff were to prevail in this case, a return

might be more of a palatable alternative than return or

destroy to ensure that the images came back.  But,

again, I think there are mechanisms that can easily be

put in place that address that concern.

MR. SALTA:  Your Honor, if I may add.  Destroy

is probably more appropriate because --

THE COURT:  I'm going to let you work that out.

MR. SALTA:  Okay.

THE COURT:  You can then present competing

versions of it if you can't work it out, but that seems

like something I'm going to give you a chance to fix in

the first instance.

MR. SALTA:  Your Honor, the plaintiff just

asked whether or not he, they can inspect everything.

He can make duplicate copies of everything with

watermarks.  Maybe that's one way around it.

THE COURT:  Meaning to further, you mean --

MR. SALTA:  He can reproduce everything with

watermarks, give it to them, they can see that

everything is exactly the same.  The file that they

would get would have watermarks on the picture.

THE COURT:  The problem with that, of course,

is that it is then cutting across the image that is in

dispute.  Right?  I mean I could see doing that,

labeling it in a particular way where it was on the edge

of the image or something that didn't interfere with the

actual --

          MR. SALTA:  Or something to that effect, yes.

          THE COURT:  But something that didn't interfere
with the actual image, visual work.  Right?  I mean when
I think of a watermark, I think of the draft watermark
that cuts across an entire page.  I understand the
purpose of that.  It's to loudly announce that this is
not a final version.  But if you put a watermark on an
image, I know you wouldn't be putting it on the original
image, but if you put a watermark on it, it would
potentially interfere with one's ability to understand
what the actual work at issue is.

          I'm open to figuring out some way to address
that concern.  I understand what the concern is.  Maybe
because I'm a judge and I believe that my orders will be
followed and mainly because they usually are, I am
confident that an attorney's eyes only protective order
will address the concern about improper dissemination of
the photographs because, frankly, if they're
disseminated, then I'm generally a pretty mild-mannered,
easy going person I think, but a different side of me
would come out if we were faced with that circumstance,
particularly because we're talking about it candidly and
openly in court.  Right?  So don't mistake my general

1

2  good nature for an inability to be ill-tempered when

3  that is required.

4          So there may be a way of trying to identify the

5  documents with some sort of Bates number, which,

6  frankly, might be useful for the litigation if there

7  ever were a trial, saying let's all turn to photograph

8  number 684 in our binder.  I've had that trial before,

9  and that's not fun.  So it may be worthwhile to have

10 some sort of identifying mechanism somewhere on the

11 documents, but doing it in a way that cuts across the

12 photograph.  I understand, Mr. Gallagher, why you'd want

13 to do that because that would be a further protection

14 against dissemination, but I think that's problematic in

15 a copyright case when what the image looks like is a big

16 part of what is at issue.

17         So I am going to allow the inspection. I'm

18 going to allow the reproduction of the photographs

19 subject to an attorney's eyes only protective order

20 which the parties will negotiate and provide to me for

21 review and approval.  You are directed to use my

22 standard form protective order as the starting point for

23 your discussions.  My hope is that that will cover a

24 significant percentage of what you would need to have

25 included, although I do think you'll need to add an

1

2  attorney's eyes only provision or perhaps make more

3  robust whatever we have in there.  I haven't read that

4  recently enough to have it completely committed to

5  memory.

6          But it's clear that Mr. Troy is amenable to an

7  attorney's eyes provision.  He understands the concerns,

8  I well understand the concerns, and they're valid

9  concerns given what this case is about.  It absolutely

10 should not be the case that there is any dissemination

11 of these works while this case is ongoing, while we're

12 having an actual live litigation about whether the

13 dissemination any of these images is appropriate or not.

14         So I think that everybody is clear on that, and

15 I am confident that this can be done in a way that will

16 satisfy the defendant/third-party plaintiffs' need for

17 discovery while also protecting the interests that the

18 plaintiff/third-party defendant has expressed here

19 today.

20         MR. SALTA:  And just a final, Your Honor.

21         THE COURT:  Yes.

22         MR. SALTA:  Will Mr. Tory bring a third-party

23 expert or a photographer to do this?  Because --

24         THE COURT:  Despite his own amateur photography

25 skills.

1

2          MR. SALTA:  Yeah, I just want to know.

3          THE COURT:  Well, you can – I don't need to

4  know that right now.  That doesn't seem like a bad idea

5  to me, Mr. Troy, just to have it done once and have it

6  done in as professional a way as possible, with all due

7  respect to your amateur photography skills.  But that's

8  not necessarily required.  And, frankly, Mr. Gallagher

9  can be present with counsel for the inspection to make

10 sure that nothing is done, I have no concern that you're

11 going to do anything to the negatives, Mr. Tory, but if

12 it would make Mr. Gallagher more comfortable having him

13 and/or his counsel present for that to make sure that

14 the things are handled in an appropriate way.  We're

15 talking about very old negatives, and we wouldn't want

16 anything to happen to them.  I'm sure both sides would

17 agree that we wouldn't want anything to happen to them.

18 Again, I'm not saying this because I have any concerns

19 about your good faith, Mr. Troy, but these are sensitive

20 and valuable photographs or negatives, and that's why

21 we're having this lawsuit.  So having somebody present

22 from plaintiff during the course of the inspection seems

23 like an appropriate additional measure to ensure the

24 proper handling of these materials.  So --

25         MR. SALTA:  Agreed, Your Honor.

1

2          THE COURT:  And whether or not he comes with an

3   expert that's up to him.  But you shouldn't expect to be

4   able to do it twice.  So if you think at some point an

5   expert is going to be needed, you should bring her or

6   bring him with you.  Okay?

7          MR. TROY:  Understood, Your Honor.

8          THE COURT:  Okay.

9          MR. SALTA:  Well, that took a while to address

10  that issue.

11         THE COURT:  But I think we've reached a landing

12  place on that.  Let's turn to the interrogatories.

13  Again, from my perspective the objection – do you need a

14  minute?  It's okay, you can take a minute.

15         (pause in proceeding)

16         MR. SALTA:  Your Honor, Mr. Gallagher, would,

17  bringing up the watermarks issue again, he says he can

18  provide copies with watermarks that will not interfere

19  with the actual image.  It'll be on the side of the

20  picture or something, that will not interfere with the

21  actual image.  But, again, if that's something we have

22  to address in a protective order, we can do it now or --

23         THE COURT:  Well, I'm not sure what that means.

24  I'm not sure if Mr. Troy reasonably knows what that

25  means.  If something goes on the side on an image that

1

2    doesn't interfere with the image, that seems analogous

3    to putting a Bates number on the bottom right corner.

4           MR. SALTA:  Yeah.

5           THE COURT:  But I'm not sure if it's really

6    going to be that or it's going to be something that is

7    more in the eye of the beholder as to whether it

8    interferes with the image or not.  I have no problem

9    with the identify of identifying the photographs.  I do

10   have a problem with the idea of the identification

11   marking interfering with the photographs in any

12   meaningful way.  And so with that guide and general

13   parameter, I will let you talk about it to try to figure

14   out exactly what should be done and how that can work.

15          MR. SALTA:  Fair enough.

16          THE COURT:  Mr. Troy, you may have objections

17   to any sort of watermark.  You've heard what I've had to

18   say.  It would be problematic if that interferes with

19   the validity of the image – validity is probably not a

20   good choice of words in a copyright case – but the

21   integrity of the image --

22          MR. TROY:  Your Honor, if I might add, my issue

23   is is that I keep hearing copy, and my point is we need

24   to see originals.  And --

25          THE COURT:  But you're going to be making a

1

2  digital copy --

3          MR. TROY:  Digital copy.  Right.  And I don't

4  have --

5          THE COURT:  You'll be making a copy.  So --

6          MR. TROY:  But after we inspect it, that's my

7  point.  And I hear Mr. Gallagher through his counsel

8  basically saying, well, we're just going to provide you

9  with copies with, you know, some sort of notation on it.

10          MR. SALTA:  No, you will inspect also.

11          MR. TROY:  Okay, I just want to be clear about

12  that.

13          MR. SALTA:  No, no, no.

14          THE COURT:  I think this is – I think this is

15  just something you can talk about further.  I've given

16  you a decent amount of guidance here as to what needs to

17  happen, and if you need to come back to haggle over the

18  particulars of what these copies of the originals will

19  look like, I'll be available for that.  And you can

20  present more precise descriptions of you each propose

21  and why what you propose would or wouldn't work.  So

22  I'll let you try to work through that a little bit on

23  your own, and if there's further consideration that I

24  need to give to this issue, we'll come back and discuss

25  it next time.

All right, let's talk about the
interrogatories.  Again, I am prepared to go through
each of them, but I think that at the outset it might
help to just have a bit of guidance because it may make
sense to go back and talk about these amongst yourselves
with this guidance rather than going through each
interrogatory in turn.

The scope of the – well, let me turn to you,
Mr. Salta.  I mean it seems a part of the objection,
sort of the, one of the overarching objections is that
the interrogatories are overly broad because they
encompass more than the photographs that you believe to
be at issue in the case.  Is that fair?

MR. SALTA:  That's pretty much it, Judge.

THE COURT:  But how is that right?  I mean I
think you – do you dispute that what the
defendant/third-party plaintiff is trying to do is to
bring within the ambit of this case the full universe of
what is covered by these 1992 copyright registrations?

MR. SALTA:  Well, that's what they're trying to
do.

THE COURT:  That's what they're trying to do.
And do you believe that they have adequately done that
through the pleadings?  Meaning do they, with their

pleadings, bring those photographs, the entirety of the

collection into the case?

MR. SALTA: Well, as to the counterclaims, for

example, the third counterclaim is – I think it's

improper because it brings in, it doesn't really address

the documents in issue and brings in a whole other realm

of documents, everything in the universe.

THE COURT: It does, right, that's what it

does. And you think that's improper for a counterclaim

because why?

MR. SALTA: Well, I think Mr. Knull explained

it in his objection saying that there's --

THE COURT: Well, he's not here, so you --

(interposing)

MR. SALTA: -- on a standing issue, on a

standing issue, they might be problematic because of the

relief that's being requested. They're requesting

declaratory relief without any standing to get that kind

of relief. Where's the standing for them to allege this

when the materials are not in dispute, okay. They're

bringing in XYZ that was not part of the takedown

pictures or the complaint, and they want to have

standing for declaratory relief on extraneous other

material. Where's the standing there? This is what

we're objecting to.

THE COURT:  Okay, so are you prepared to file a motion to dismiss on that ground?

MR. SALTA:  We would like to.

THE COURT:  Okay.  Well, that would not be before me.  That would be before Judge Karas, and Judge Karas has particular rules with respect to the filing of motions, premotion conference letters and such.  So look at those, file your letter.  Today is Wednesday.  File it by Monday.  Okay?

MR. SALTA:  Okay, Judge.

THE COURT:  Fine.  And you'll respond, Mr. Troy, in according with Judge Karas' rules with respect to that.  And this goes for the counterclaim but also the third-party complaint, right?

MR. SALTA:  Yes.

THE COURT:  So you would be seeking to dismiss the third-party complaint and the counterclaim to the extent those pleadings go beyond the 17 photographs that you concede are at issue in your version of the, your interpretation and understanding of --

MR. SALTA:  That's the issue, Judge.

THE COURT:  Okay.  And that's an issue.  If you're really ready to move on that, then, you know, Mr.

1

2  Troy, you're right that they didn't move on that before

3  and that's within the scope of discovery as the

4  pleadings currently stand.  But this is a 2022 case,

5  we're at an early stage.  It's a standing motion which

6  is essentially a subject matter jurisdiction issue, and

7  it really does go to the heart of these disputes.

8  wouldn't you agree with that?

9         MR. TROY:  Yes, Your Honor.

10        THE COURT:  I mean briefly your argument for

11  why your client has standing to address these other

12  photographs with respect to the copyright and not just

13  the 17 --

14        MR. TROY:  Well, first of all, I'm not quite

15  sure how we've settled on this 17 number because --

16        THE COURT:  All right, that's just a number

17  that he's mentioned.  You can all talk about that a

18  little bit more.

19        MR. TROY:  But to answer your question more

20  fully, Your Honor, our client, my client has access to

21  many, many, many, many more photos, and many of them we

22  believe are included in the 1992 copyright filing, and

23  then we have the situation where the 2000 copyright

24  filing doesn't really cover the images that are in

25  there.  Because it's a compilation, it only covers the

text and organization. And there's a fundamental

difference in what plaintiff keeps asserting in takedown

notices when looking at the, what we call the book.

THE COURT: Right, there have been – I guess

let me just simplify it. As I understand it, the

photographs that are specifically at issue in this

lawsuit, according to the plaintiff, that's one category

of things that your clients have been forced to address.

The second concern is there have been takedown notices

with respect to other photographs, right?

MR. TROY: Correct, Your Honor.

THE COURT: Not just the ones that we're

talking about here?

MR. TROY: Correct, Your Honor.

THE COURT: Okay, and am I right to assume that

your clients have a concern that if the entire universe

of photographs is not addressed in this lawsuit, that it

will just be a whack-a-mole game of trying to figure out

what they can and can't post and potentially be

subjecting themselves to future lawsuits if they post

what they believe to be photographs that should be in

the public domain or something to that effect?

MR. TROY: Correct, Your Honor, but I would go

one step further. The whack-a-mole occurs long before

1
2    we get to court --

3              THE COURT:  Right, because you had the takedown

4    orders and --

5              MR. TROY:  -- we have the takedown, and as we

6    all know, meta and all the other social media companies,

7    they don't want to have anything to do with any of this,

8    and --

9              THE COURT:  They have a sensitivity when it

10   comes to copyrighted material or allegedly copyrighted

11   material.

12             MR. TROY:  Correct, Your Honor.

13             THE COURT:  Right.  So you're going to argue

14   that those fears are not reasonably founded despite a

15   history of takedown issues and this lawsuit and that

16   there's no standing to try to address this issue more

17   broadly because you really think it should just be

18   limited to the ones that are part of your pleadings.

19             MR. TROY:  Absolutely.

20             THE COURT:  Okay, well, we'll see.  That's an

21   interesting legal question.  I don't think it's a slam

22   dunk as a motion to dismiss for sure.  But we'll see.

23   And it's a strategic choice at some level for you to

24   make I guess, Mr. Salta, because it would seem to be

25   beneficial at some level to get some clarity on these

1

2 | issues and not just piecemeal.  But I understand that a

3 | piecemeal approach leaves you and your clients with a

4 | bit more flexibility to test these issues in future

5 | cases, although I would think that if the matter is

6 | litigated as to several photographs here, if there were

7 | to be future litigation, there would be arguments about

8 | the estoppel effect of the decisions, whatever they

9 | might be, from this case.  Which is all the more reason

10 | to actually just address it all at once, but there might

11 | be reasons that are past my understanding for why it's

12 | better to do it as, you know, a thousand separate two-

13 | photograph litigations rather than one single 2,000

14 | photograph litigation.

15 |         MR. SALTA:  Well, that's why we figure having

16 | an inspection, you know, looking at everything, Mr. Troy

17 | will have access to all the photographs, everything, and

18 | he'll be able to, once everything's resolved in this

19 | case, will be able to adequately consult with his

20 | clients as to what's proper and what's not.  You know,

21 | he's getting the material.

22 |         THE COURT:  Except after this case is over, he

23 | has to return or destroy those photographs.  So that's

24 | not going to be of great ongoing utility to him and his

25 | clients.  So I don't accept that as a rationale

particularly, and I just, from a perspective of judicial

efficiency and administration, the idea of being

bombarded with hundreds of these lawsuits, one or two or

three or five photographs at a time, just doesn't seem

to make a whole lot of sense.

MR. SALTA:  I understand, Judge.

THE COURT:  All right, I mean I guess the

question is, so it sounds like this is going to be teed

up for Judge Karas.  I'll let him to expect your letters

next week.  Melissa, can you just confirm that Judge

Karas does, in fact, have a premotion conference

requirement for filing motions to dismiss?  I'm pretty

sure he does, but it's worth doublechecking.

MR. TROY:  I believe he does.

THE COURT:  I'm almost positive he does, but we

can look it up right now.  I guess the question then

becomes whether it makes sense to still work through

these issues as to the interrogatories when the thrust

of the objection is that it's beyond the scope of what

should be included in the discovery in the case because

from the plaintiff's point of view/third-party

defendant's point of view, the interrogatories are

overbroad in that they address photographs that are

outside the scope of what should be included.  What're

your thoughts on that, Mr. Troy?

MR. TROY: Well, I think Your Honor actually hit the name on the head so to speak, and that is is that I think Mr. Gallagher should look at this as I'm doing him a favor because by --

THE COURT: I'm sure he thinks that. I'm sure he'll thank you afterwards.

MR. TROY: -- by actually dealing with all of these at one time, we had the opportunity to have a little more certainty as to what he claims in the copyright in the archive.

THE COURT: You could lose on that argument -

MR. TROY: I could absolutely lose.

THE COURT: And then Mr. Gallagher's hand will be strengthened. So I mean in that sense yes. Look, I mean, again, this has obviously been a dispute that has been ongoing for years. I'm new to it. So I'm sure, as with most cases that come before me, you know a lot more about it than I do and the particulars and nuances of why you've chosen to plead it in the way that you have. So I'm not suggesting that I know best when it comes to this. It just seems that the way this is potentially being set up is just not very efficient. All right, point taken. I doubt that Mr. Gallagher's actually

going to thank you, but I understand your point.

On the point of the interrogatories though, my instinct here is that we should probably defer further discussion of that because a big part of the objection is as to the scope and what is the proper scope of this case.  Do you agree or disagree?

MR. TROY:  I do agree, Your Honor, but my question is is what happens after we sit here today and you've ordered for the plaintiff to file motion letters with Judge Karas, and they later chose not to.

THE COURT:  Well, if they don't file, then by Monday, as I've ordered – hold on.

(pause in proceeding)

THE COURT:  (indiscernible) copy to the court and file on ECF.  Then conference, and he'll set up – yeah, okay, so yes.  So they have to file it by Monday. If they don't file it by Monday because, look, they're going to go back and talk about it, and they'll have a discussion about whether they're sure they really want to spend the time and money filing this motion to dismiss for lack of standing.  And if they decide to do it, then they'll do it.  And if not, then we'll come back next week or the week after at the latest and we'll go through the interrogatories.

1

2          I'll pay attention to the docket.  I'll see if

3   the letter is filed or not.  And if it's not, you should

4   expect a scheduling order from me next week setting

5   another date for a conference for us to all come back

6   here.  We'll pick up where we left off.  In the meantime

7   the inspection I think should still proceed because if

8   anything part of the argument from the plaintiff seems

9   to be that that inspection might accomplish some of the

10  efficiency goals that I am suggesting would be

11  accomplished by allowing the lawsuit to proceed in its

12  current form, but I'm not sure if, how that's going to

13  play into the premotion conference letters.

14          But you should at least spend some time this

15  week thinking about the protective order, getting that

16  submitted to me.  And if there's not going to be a

17  motion which would potentially if successful limit the

18  scope of the litigation, then we'll absolutely come back

19  and address these issues promptly.

20          So with that understanding, would you agree,

21  Mr. Troy, that it makes sense to hold off and see what

22  the next step is from the plaintiff/third-party

23  defendant?

24          MR. TROY:  Who am I to disagree with you, Your

25  Honor.

THE COURT:  No.  I don't mean to suggest that a
person cannot disagree with me.  That's not my
suggestion at all.  I'm seriously asking you because it
does seem like that's a big part of their objection, and
it's hard to address that with the potential uncertainty
about a motion to limit the scope of the case.

MR. TROY:  My understanding is is that if, in
fact, then they do not file a motion to dismiss, then it
is all in, and then their objections are at least no
longer valid.

THE COURT:  At least those objections.  And
they have other objections it seems as well.  But, yes,
when I say we'd come back and address these, I would
first ask you to try to address them amongst yourselves
because Mr. Salta has essentially conceded that the
current, and the whole purpose of filing a motion would
be because there is an acceptance that the third-party
complaint and the counterclaim do attempt to bring
within the ambit of this case the entirety of the
universe of copyrighted works.  And so any objection
based on that would be not well taken if there's not
going to be a motion to dismiss because there's
essentially been a concession that that's part of the
case.

So I think there'd be an opportunity if there's

not going to be a motion to dismiss for you to meet and

confer further and see if you could answer these

interrogatories without my having to be involved.  But

we'll set a conference date so that that puts the onus

on you to do that promptly, and if you can't get it

sorted out, then we'll come back and I'll walk through

them one by one.  We've now spent a good amount of time

here laying the foundation, and it'll be easy to pick up

from here in two weeks or less if that's appropriate.

Mr. Salta, does that approach seem sensible to

you?

MR. SALTA:  It's perfectly sensible, yes,

Judge.

THE COURT:  Okay, so Monday, no later than

Monday you'll file your premotion conference letter

should you chose to proceed that way.  Of course, you

are completely at liberty to decide not to do that once

you have a more detailed strategic discussion.  I mean

the benefit of Mr. Gallagher having been here is he's

heard everything I've had to say for better or for

worse.  And so you'll be able to think through that and

talk to Mr. Knull about it and decide how you want to go

about it.

1

2      MR. SALTA:  Yeah.

3          THE COURT:  Okay, that all makes sense.  And it

4  turns out that Mr. Salta was prepared.  So that was

5  great.  People come and, especially for counsel who, you

6  know, have different types of practice and some people

7  don't come to court that often, it's not uncommon for

8  that kind of thing to happen.

9          All right, is there anything else that we

10  should address – so let's come back to this last issue

11  that I started out at the beginning with respect to

12  discovery into communications with this Transparency

13  Project entity.  Is that something you're prepared to

14  address today, Mr. Salta, because, again, I'm not really

15  sure that I've been given much of an explanation for why

16  that discovery is necessary.  It may be also something

17  that's worth putting off until next time.

18          MR. SALTA:  Well, okay, in a nutshell, the

19  third count of the complaint alleges false information

20  being disseminated, false and inaccurate information by

21  Mary Kelly.  Obviously, information has been imparted to

22  her, and she has disseminated information to all over

23  the place online.  My client's been called a felon, a

24  scam artist, it's all over the place.  I don't know if

25  Your Honor saw the New York Times article --

1

2      THE COURT:  I did see it --

3      (interposing)

4      MR. SALTA:  That was promoted by these people.

5  So inasmuch as we have that allegation, that 43(a) I

6  believe allegation in the third count, this is relevant.

7  It's relevant to damages, to her state of mind, intent.

8  These things are relevant given what's transpired even

9  post service of the complaint kept going.

10      THE COURT:  Okay.  I mean part of the argument,

11  again, this I don't really feel has been teed up for me

12  in a way that's entirely ready for my review today, so

13  we may have to come back here in two weeks to discuss

14  this issue regardless of what happens with the motion to

15  dismiss.

16      I'm looking the complaint, the unfair

17  competition claim under the Lanham Act.  It's not clear

18  to me that that gives rise to a basis for a request for

19  all communications with a large group of individuals,

20  and part of the response is that there's a privilege

21  issue because of the litigation funding relationship,

22  and that's something, if that's Mr. Troy's position,

23  that I probably need to see some briefing on in part --

24      MR. SALTA:  We never received a privilege log.

25      THE COURT:  Right, I was going to say in part

because there would have to be some declarations

attesting to the exact nature of the relationship so

that I could evaluate the privilege claim, separate and

apart from evaluating the legal claim about privilege

vis-à-vis communications of litigation funders.  But

that, again, all of that is just not really ripe here

for my determination.  Mr. Troy, I'll just give you a

minute to give me your view on that so I can think about

it a little bit in the interim.

MR. TROY:  I think you hit the nail on the head

with respect to privilege, and I actually addressed that

briefly in one of my letters to Mr. Knull.  But the

43(a) claim is spurious at best.  I mean if you read

through there and you know about the Lanham Act, there's

a single word of trademark or trade dress in the entire

unfair competition, and this is indicative of what I've

seen in a number of unfair cases that have claimed

unfair competition in the past, that this is not, even

though they may think this is unfair competition, it

does not fall under the Lanham Act under 43(a).  But if

I need to brief that, I will do so.

THE COURT:  Yeah, I mean I did see, you know,

you mentioned, I happen to have it on the top of my pile

here because I had been looking at this before the

conference.  The letter that you sent, Mr. Troy, to Mr.

Knull on October 11, you do - I think this is the letter

you're referring to where you do refer to some of the

case law on litigation funding communications.

MR. TROY:  Yes.

THE COURT:  So I've seen the beginning of that.

I don't think there was anything in there about the

Lanham Act.  But as far as whether the Transparency

Project is actually a litigation funder or not, that

your representation, plaintiff seems to dispute that, I

would need some submissions on that just as a factual

matter to be able to evaluate the privilege claim.

So let's take stock of where we are after next

week.  I will make a notation on my case tracking

spreadsheet to follow up with a scheduling order by the

end of next week one way or the other because we'll need

to think about how we're going to move forward with

discovery, whether it makes sense to move forward with

discovery in a limited way even while a motion is

pending if a motion is going to be filed or whether it

makes sense to stay discovery and come back to it at

some later point.

The problem is that if a motion is filed,

there's going to be delay because Judge Karas, like all

the district judges in this district and in particular

in this building, has got a long list of motions to

decide.  So it's unlikely that it would be addressed

immediately, especially because standing issues require

nuanced analysis like many other motions do.  So I'm not

sure exactly which way that would cut in terms of the

parties' views on discovery, but rather than engaging in

a multilayers hypothetical exercise about scheduling

now, I'm going to see where we are come next Thursday or

Friday in terms of whether the premotion letter has been

filed, whether the parties have had any discussions in

advance of those premotion letters about what should be

done about discovery.  You should think about it, talk

to each other about it.  You could include that in your

premotion letters to Judge Karas because ultimately he

would have to approve of any stay of discovery if that's

how you want to go about it.  And then I'll follow up

with the scheduling order at the end of the week,

depending on what you've said if anything to Judge Karas

about the motions and how discovery should be handled.

Okay?

            MR. TROY:  Okay.

            MR. SALTA:  Thank you, Your Honor.

            THE COURT:  All right, is there anything

1
2  further that we should address then today from a
3  plaintiff's perspective, Mr. Salta?
4          MR. SALTA:  No, Judge.
5          THE COURT:  All right, Mr. Troy, anything from
6  the defendant's perspective/third-party plaintiffs,
7  etc.?
8          MR. TROY:  No, Your Honor, I thank you very
9  much for addressing I think the issues that were before
10 the Court.
11         THE COURT:  Okay, thank you both.  It's nice to
12 meet you all in person, and we'll be back together again
13 whether soon, sooner or later because even if there's a
14 motion and even if it's granted, there will be more
15 litigation to come in this case.  So I will see you when
16 I see you.  Stay safe and stay healthy, everybody, take
17 care.
18         MR. TROY:  Thank you.
19         MR. GALLAGHER:  Thank you, Your Honor.
20         MR. SALTA:  Thank you, Your Honor.
21         (Whereupon the matter is adjourned.)
22
23
24
25

# C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, RICHTONE DESIGN v. KELLY, et al., Docket #22cv1606, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:  May 4, 2023